IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

OMNIFRIO BEVERAGE COMPANY, )
LLC, )
 )
    Plaintiff, )
 )
vs. ) Civil Action No. 3:13-cv-_____
 )
PRIMO WATER CORPORATION, )
and PRIMO PRODUCTS, LLC, )
 )
    Defendants. )
_____

## VERIFIED COMPLAINT

Plaintiff Omnifrio Beverage Company, LLC ("Omnifrio"), through the undersigned counsel, complaining of defendants Primo Water Corporation and Primo Products, LLC (collectively, the "Defendants"), hereby alleges and states as follows:

### NATURE OF THE CASE

1. This is an action for damages arising out of the Defendants' failure to make certain payments to Omnifrio pursuant to an Asset Purchase Agreement and amendments thereto executed by the parties.

### PARTIES, JURISDICTION, AND VENUE

2. Omnifrio is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Ohio.

3. The members of Omnifrio are Carl Santoiemmo, Cathy Mangino, Gerald Forstner, Jr., Michael Roizen, the Lawrence Pollock Defective Irrevocable Trust, ECE

Capital, LLC, and Green Mountain Coffee Roasters, Inc.

4. Carl Santoiemmo is a citizen and resident of the State of Ohio.

5. Cathy Mangino is a citizen and resident of the State of Ohio.

6. Gerald Forstner, Jr. is a citizen and resident of the State of Ohio.

7. Michael Roizen is a citizen and resident of the State of Ohio.

8. Lawrence Pollock is a citizen and resident of the State of Ohio.

9. ECE Capital, LLC is a limited liability company organized and existing under the laws of the State of Ohio with its principal place of business in Cleveland, Ohio. The sole member of ECE Capital, LLC is Steven Ross, who is a citizen and resident of the State of Ohio.

10. Green Mountain Coffee Roasters, Inc. is a corporation organized and existing under the laws of the State of Vermont with its principal place of business in Waterbury, Vermont.

11. Upon information and belief, Primo Water Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Winston-Salem, North Carolina.

12. Upon information and belief, Primo Products, LLC is a limited liability company, organized and existing under the laws of the State of North Carolina with its principal place of business in Winston-Salem, North Carolina.

13. The matter in controversy exceeds the value of $75,000.00, exclusive of interest, fees, and costs.

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and (2).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

16. In or around March 8, 2011, Omnifrio and Defendants (collectively, the "Parties") entered into an Asset Purchase Agreement (the "Original Agreement"), a true and correct copy of which is attached hereto and incorporated herein as **Exhibit A**.

17. Omnifrio entered into the Original Agreement for the purpose of selling to Defendants substantially all of the assets of Omnifrio, including but not limited to the proprietary Omnifrio Single-Serve Beverage Creations appliance used to dispense custom-made single-serve beverages (the "Appliance"), in exchange for payments by Defendants.

## WARRANTIES

18. Pursuant to the terms of the Original Agreement, Omnifrio warranted, among other things, the following (collectively, "Omnifrio's Warranties"):

    a. That Omnifrio had good and marketable title to the assets which it conveyed to Defendants;

    b. That the purchased assets included what was necessary for the continued conduct of the Business[1] after closing;

---

[1] Pursuant to the DEFINITIONS section of the Original Agreement, "Business" "means the business conducted by the Seller, including the activities carried on by the Seller for the purpose of the production, sale and distribution of Appliances and the other products related thereto including the (a) flavors and formulations of the cups containing the flavor mixes and (b) the $CO_2$ cylinders used in connection with such Appliances."

3

c. That the purchased assets included what was necessary for the production of 20,000 Appliances[2] from the closing date through December 31, 2011; and

d. That the purchased assets were adequate for the uses to which they were being put.

19. Prior to and through the Closing, Omnifrio presented and demonstrated the Appliance as a working prototype product and expressly told the Defendants that the tooling was temporary, aluminum tooling, which would require a natural progression to steel tooling when the finished product was completely designed and approved.

20. In or around April of 2011, the Defendants closed on their purchase of Omnifrio's assets (the "Closing").

## ORIGINAL PAYMENT OBLIGATIONS

21. Pursuant to the terms of the Original Agreement, Defendant agreed to pay Omnifrio $2,000,000 in cash at Closing and issue a certain amount of Primo Stock to Omnifrio.

22. Pursuant to the terms of the Original Agreement, Defendant further agreed to make the following additional payments to Omnifrio:

a. $2,000,000 in cash on the fifteen-month anniversary of the Closing (the "Original Deferred Cash Consideration"); and

b. $1,000,000 if within nine (9) months of the Closing Primo achieves a pilot manufacturing run of fifty (50) sample Appliances, and $2,000,000 if within nine

---

[2] Pursuant to the DEFINITIONS section of the Original Agreement, "Appliance" "means the proprietary Omnifrio Single-Serve Beverage Creations appliance used to dispense custom-made single-serving beverages."

4

(9) months of the Closing the Appliance is certified in writing by MET Laboratories for compliance to electrical safety standards (collectively, the "Original Milestone Payments").

23.     In or around May 11, 2011, the Parties entered into the First Amendment to Asset Purchase Agreement (the "First Amendment"), a true and correct copy of which is attached hereto and incorporated herein as **Exhibit B**.

## POST-CLOSING MODIFICATIONS

24.     After the Closing, the Defendants chose to implement significant changes to the Appliance, which required a complete mechanical and electrical redesign of the Appliance, relocation of internal components, new molds, tooling, cosmetics and software.

25.      After Closing, the Defendants chose to re-formulate the flavors for the Appliance.

26.     After Closing, the Defendants chose to cancel purchase orders with a U.S. manufacturer and purchase orders with component suppliers.

27.     After Closing, the Defendants chose to move the manufacturing of the Appliance to China.

28.     In spite of the Defendants' substantial changes, on or about November 8, 2011, MET Laboratories, Inc. issued an electrical safety compliance letter regarding the Appliance, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit C**.

## AMENDED PAYMENT OBLIGATIONS

29. In or around February of 2012, the Parties began discussing a second amendment to the Asset Purchase Agreement in large part because of the delays caused by the Defendants' post-closing modifications to the Appliance.

30. During the negotiation of the second amendment, the Defendants pressured Omnifrio to enter into a second amendment by stating, among other things, that "[w]e are running out of time to get something done here."

31. In or around March 15, 2012, the Parties entered into the Second Amendment to Asset Purchase Agreement (the "Second Amendment" and together with the First Amendment and the Original Agreement, the "Asset Purchase Agreement"), a true and correct copy of which is attached hereto and incorporated herein as **Exhibit D**.

32. Pursuant to the terms of the Second Amendment, Defendants agreed to pay Omnifrio $1,000,000.00 on July 11, 2012 and an additional $1,000,000.00 on January 4, 2013 (collectively, the "Amended Deferred Cash Consideration").

33. At the time the Second Amendment was signed, Defendants did not dispute their obligation to pay Omnifrio the Original Deferred Cash Consideration. The Second Amendment simply extended the date by which Defendants were required to make payment of the Original Deferred Cash Consideration to Omnifrio.

34. Pursuant to the terms of the Second Amendment, the Milestone Payments were amended as follows: the Defendants agreed to pay Omnifrio $1,000,000.00 within sixty (60) days following the Defendants' shipment to a retailer customer of the first

5,000 Appliances, an additional $1,000,000.00 within sixty (60) days of the Defendants' shipment of the next 10,000 Appliances, and an additional $1,000,000.00 within sixty (60) days of the Defendants' shipment of the next 10,000 Appliances (collectively, the "Amended Milestone Payments").

35. Upon information and belief, after the Closing but before executing the Second Amendment, the Defendants planned to sell or discontinue operations pertaining to the Appliance but kept this information from Omnifrio.

36. Upon information and belief, at the time the Defendants entered into the Second Amendment, which included the Amended Milestone Payments upon shipment of certain quantities of the Appliance, the Defendants knew that the Milestone Payments would never be triggered because Defendants planned to sell or discontinue operations related to the Appliance.

37. Upon information and belief, even though Defendants planned to sell or discontinue operations related to the Appliance, Defendants urged Omnifrio to sign the Second Amendment, thereby depriving Omnifrio of the opportunity to receive the Original Milestone Payments.

38. On or about July 10, 2012, one day before the first million dollar payment was due to Omnifrio, the Defendants informed Omnifrio that Omnifrio had breached the Omnifrio Warranties and, as a result, the Defendants were asserting an indemnification claim and exercising their purported set-off rights in connection with those claims against the first one million dollars of the Deferred Cash Consideration.

7

Case 3:13-cv-00326-GCM   Document 1   Filed 05/30/13   Page 7 of 11

39. On or about July 19, 2012, Omnifrio provided the Defendants with a written rejection of Defendants' indemnification and set-off claims.

40. On or about December 27, 2012, the Defendants informed Omnifrio that the Defendants were claiming damages in excess of two million dollars and, accordingly, were not going to make the second installment payment of the Amended Deferred Cash Consideration.

41. Despite the Defendants' claims to the contrary, Omnifrio has complied with all material terms of the Asset Purchase Agreement, including but not limited to all terms related to the Omnifrio Warranties.

42. The Defendants have failed and refused to make payments to Omnifrio pursuant to the terms of the Asset Purchase Agreement.

## COUNT I
## BREACH OF CONTRACT

43. Omnifrio adopts and realleges the above-referenced allegations as if fully set forth herein.

44. Defendants have breached the Asset Purchase Agreement by failing to make payments to Omnifrio when due.

45. Omnifrio has suffered damages as a direct and proximate result of Defendants' breach of the Asset Purchase Agreement.

46. Omnifrio is entitled to damages against the Defendants, jointly and severally, in an amount to be proven at trial, plus interest as allowed by law.

8

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AND BAD FAITH BREACH OF CONTRACT

47.     Omnifrio adopts and realleges the above-referenced allegations as if fully set forth herein.

48.     As a matter of law, the Defendants had a duty to act in good faith and in accordance with fair dealings in the performance of their contractual duties to Omnifrio, said duties being implied into every contract.

49.     Upon information and belief, the Defendants breached their contractual duties to Omnifrio in bad faith and breached their implied duties of good faith and fair dealing by, *inter alia*, concealing from Omnifrio that Defendants planned to discontinue operations related to the Appliance, and by entering into the Second Amendment when the Defendants knew that they were discontinuing the Appliance operations and therefore would not make the Amended Milestone Payments.

50.     As a direct and proximate result of the Defendants' breaches, Omnifrio has suffered damages in excess of $75,000, and is entitled to recover damages from Defendants, jointly and severally, in an amount to be proven at trial, plus punitive damages and interest as allowed by law.

**WHEREFORE**, Omnifrio respectfully requests that the Court grant the following relief:

1.      That Omnifrio have and recover from Defendants, jointly and severally, compensatory damages in an amount to be proven at trial, but in excess of $75,000;

2.     That Omnifrio have and recover from Defendants, jointly and severally, punitive damages;

3.     That the costs and expenses of this action be taxed against the Defendants, jointly and severally;

4.     That all factual issues be decided by a jury; and

5.     For such other and further relief as this Court deems just and proper.

Respectfully submitted this 30th day of May, 2013,

/s/ Colleen L. Byers
COLLEEN L. BYERS, NC BAR NO. 38067
Email: cbyers@belldavispitt.com
/s/ Edward B. Davis
EDWARD B. DAVIS, NC BAR NO. 27546
Email:   ward.davis@belldavispitt.com
**ATTORNEYS FOR OMNIFRIO BEVERAGE COMPANY, LLC**
Bell, Davis & Pitt, P.A.
227 W. Trade St., Suite 2160
Charlotte, NC 28202
Telephone:     704/227-0400
Facsimile:     704/227-0178

STATE OF OHIO

COUNTY OF CUYAHOGA

**VERIFICATION**

**Carl Santoiemmo**, being duly sworn, deposes and says that he is an authorized representative of Omnifrio Beverage Company, LLC in the above-titled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true of his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters he believes them to be true.

*[signature]*

**Carl Santoiemmo,**
Authorized representative of
Omnifrio Beverage Company, LLC

Cuyahoga County, Ohio

Signed and sworn to before me this day by **Carl Santoiemmo**.

Date: 5/29/13

*[signature]*
Official Signature of Notary

MARIA TERESA FERNANDEZ
Notary's printed or typed name, Notary Public

My commission expires: 12/16/2014

MARIA TERESA FERNANDEZ
Notary Public, State of Ohio
My Comm. Expires Dec. 16, 2014
Recorded in Cuyahoga County

11